# CHARLESTON.

## NATIONAL EXCHANGE BANK v. SIMPSON.

Submitted April 25, 1916.    Decided May 9, 1916.

FRAUDULENT CONVEYANCES—*Transactions Invalid—Relation of Parties—Husband and Wife.*

A married woman may take property by conveyance from her husband, provided it clearly appear that she paid a valuable consideration for the same with money which belonged to her, and that it further appear from the evidence that the conveyance was not made to hinder, delay or defraud his creditors.

Appeal from Circuit Court, Lewis County.

Suit in equity by the National Exchange Bank against Thomas W. Simpson, Sr., and others. From a decree for defendants, plaintiff appeals.

*Affirmed.*

*Robert L. Bland,* for appellant.

*Chas. P. Swint,* for appellees.

MASON, JUDGE:

The defendants, Thomas W. Simpson, Sr., and Louisa A. Simpson, were married to each other September 28, 1909. She was a widow and he a widower, and each about 65 years old. She had some money; he had some real estate in Weston, W. Va. Prior to her marriage to Simpson she lived in Wheeling, W. Va. On the 11th day of November, 1909, he conveyed to her his real estate, the consideration named in the deed being ''five dollars and other valuable considerations, in hand paid.'' The deed was admitted to record November 12, 1909, and the parties occupied the property as a dwelling for themselves and family.

On the 15th day of November, 1912, the National Exchange Bank of Weston obtained a judgment against the said Thomas W. Simpson, Sr. and others in the circuit court of Lewis County, for $424.03 and costs. This judgment was not paid, and at the October rules, 1913, the bank instituted this suit in chancery in the circuit court of Lewis County alleging that the deed made by the said Thomas W. Simpson, Sr., to his wife, dated November 11, 1909, was voluntary and without consideration, and that the judgment was a lien thereon, and asked to have the deed set aside in so far as its interests are concerned, and the property sold to satisfy the judgment and costs.

Demurrer to this bill was sustained, and plaintiff was permitted to file an amended and supplemental bill. The amended bill alleges in addition to the allegations contained in the original bill that the conveyance made by Thomas W. Simpson, Sr., to his wife was not only voluntary and without consideration, but that ''it was made by an impecunious and in-

solvent husband in favor of his wife with　＊　＊　＊　intent on the part of both'' of them to withdraw the property from his' creditors, and was "a mere contrivance resorted to for the purpose of placing said property beyond the reach of the creditors.'' The amended bill also alleges that the "note upon which the judgment was based was executed by the defendant, Bastow Manufacturing Company, a corporation, in favor of Thomas W. Simpson, Sr., in renewal of two certain notes which said Bastow Manufacturing company, a corporation, had theretofore executed in favor of Thomas W. Simpson, Sr., and which he the said Thomas W. Simpson, Sr., had endorsed to plaintiff for valuable consideration, the two notes having been merged into the said note on which the said judgment was based; and that one of said notes executed by said Bastow Manufacturing Company, a corporation, in favor of said Thomas W. Simpson, on the 31st day of July, 1909, payable in four months, amounting to $316.01, and said note was from time to time renewed by said defendants until the 2nd day of December, 1910, when a new note was executed by said Bastow Manufacturing Company in favor of Thomas W. Simpson, Sr., embodying and including said two smaller notes, and the said larger note thus renewed was carried at plaintiff's bank until it was reduced to judgment as aforesaid. Said note for $316.01 was owing to plaintiff long prior to the date of said deed made by said Thomas W. Simpson, Sr., in favor of said Louisa A. Simpson,'' thus alleging that a large part of the debt upon which the judgment was based existed at the time the deed was made to the wife. The amended bill also alleges that the husband had sold to the wife a tin shop, and alleges that this was also fraudulent, but as this allegation was stricken out on demurrer, it need not be considered.

The defendants, Thomas W. Simpson and wife, appeared and demurred to the bill. The court sustained the demurrer as to the new matter in relation to the tin shop, and overruled it as to the other allegations. They then answered the amended bill, having theretofore answered the original bill. Depositions were taken on the part of the plaintiff, and on the part of the defendants Simpson and wife.

The proof shows that at one time the defendant Thomas W. Simpson, Sr., was a member of the firm of Simpson & Sons, and that on the 31st day of July, 1909, the plaintiff bank discounted for the firm a note calling for $316.01, payable four months from July 31, 1909, executed by the Bastow Manufacturing Company to Simpson & Sons; that this note was renewed November 30, 1909, for four months, and again renewed March 30, 1910, for four months, and not paid when it became due in July, 1910, remaining past due until December 2, 1910; and that in the meantime, to-wit, May 23, 1910, the bank had cashed for T. W. Simpson another note executed to him by said Bastow Manufacturing Company. This note for $112.00 and the note for $316.01 were consolidated December 2, 1910, and a new note executed by the Bastow Manufacturing Company to T. W. Simpson instead of Simpson & Sons, for $436.56. In August, 1911, this note was reduced by payments, to $400.00, and a new note executed to T. W. Simpson by said company. This note was not paid. It became due in December, 1911, and suit was brought thereon nearly a year later, and that is the note upon which the judgment for $424.03 was rendered. It appears from the evidence that the Bastow Manufacturing Company was engaged in business in Weston; that it was apparently solvent when this deed was executed; that it was the principal debtor; that it was insolvent when the present suit was brought; that the note upon which the judgment was obtained became due, December 2, 1911, and judgment was not obtained and no effort to obtain one until November 15, 1912; and that suit was not brought on the note until about a year later; and that in the meanwhile the Bastow Manufacturing Company had become insolvent. It does not appear just when this company became insolvent or why the bank delayed suit, nor is it perhaps necessary that this should appear. Thomas W. Simpson was liable for the debt, and if he fraudulently conveyed his property to his wife for the purpose of hindering and delaying the plaintiff in the collection of its debt, it has the right to have the deed set aside as to this debt. But has the plaintiff proven its case? The learned judge of the circuit court did not so believe.

It is proved that defendant Louisa A. Simpson was at the time of her marriage the widow of Robert R. Clark, deceased, who died in December, 1907; that she got from her former husband about $1400.00 in cash; that she received, December 28, 1907, from the order of the Modern Woodmen of America, the sum of $1,000.00, life insurance, and she received from the Junior Order of American Mechanics, of Wheeling, on account of her husband's death, $125.00, making in all received from her husband's estate the sum of $2,525. She says in her deposition that when she married Simpson, she had about $2,000.00. She shows fully where she got the money, and how much she had, and there is no evidence to the contrary. One of the first and most important things in controversies of this kind is for the wife to show that she paid for the property with her own money and not with her husband's. Mrs. Simpson fully complied with this condition. Whatever was paid, was the money of the wife. He had none. But the bill alleges that the conveyance was made by an "impecunious and insolvent husband." It is conceded that at the time this deed was made, Thomas W. Simpson was in debt and that his wife knew it. She knew that he would be compelled to sell the property to pay his debts. But a person who is in debt is not prohibited for that reason from selling his property. It may be his reason for so doing, and if the sale is bona fide and the proceeds thereof applied to the payment of the debts, there is not fraud. It does not appear that Mrs. Simpson did not agree to pay full value for the property. She paid, as she and her husband both testify, $300.00 in cash at the time, and various sums at other times, amounting to at least $2,000.00. These sums were applied largely to the payment of Simpson's debts. Mrs. Simpson accounts fully for the money with which the payments were made.

There do not appear to be any debts against Simpson unpaid except the judgment due the plaintiff. If all the debts were paid out of the sale of the house and lot, except plaintiff's judgment, and the debt is against the Bastow Manufacturing Company as principal debtor, and it was solvent when this deed was made, Mr. Simpson was not then insolvent. While he would be liable for the bank's debt as between him

and the bank, the claim against the company would be an asset. In other words, considering the Bastow Manufacturing Company note as a solvent asset in favor of Simpson, he does not appear to have been insolvent when the deed was made. A person is not insolvent when all his property will pay all his debts.

It plainly appears in this case that the defendant Louisa A. Simpson bought the property in question from her husband and paid for it with money belonging to her, and that there is no fraud in the transaction. Therefore, we affirm the decree of the circuit court.

*Affirmed.*